## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY RAUL, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>SI FINANCIAL GROUP, INC., MARK D. ALLIOD, RHEO A. BROUILLARD, ROGER ENGLE, DONNA M. EVAN, MICHAEL R. GARVEY, ROBERT O. GILLARD, KEVIN M. MCCARTHY, KATHLEEN A. NEALON, DENNIS POLLACK, and ROBERT C. CUSHMAN SR.,<br><br>　　　　　　　Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Tammy Raul ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by SI Financial Group, Inc. ("SI Financial" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning SI Financial and the Defendants.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public shareholders of SI Financial against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company in an all-stock transaction with Berkshire Hills Bancorp, Inc. ("Berkshire") (the "Proposed Transaction").

2.      On December 11, 2018, SI Financial entered into an Agreement and Plan of Merger (the "Merger Agreement") with Berkshire, pursuant to which, among other things and subject to the conditions set forth therein, the Company will merge with and into Berkshire (the "Merger"), with Berkshire continuing as the surviving corporation. Immediately following the Merger, SI Financial's wholly-owned subsidiary, Savings Institute Bank and Trust, will merge with and into Berkshire's wholly-owned subsidiary, Berkshire Bank, with Berkshire Bank as the surviving bank.

3.      Pursuant to the terms of the Merger Agreement, each outstanding share of common stock, of SI Financial will be converted into the right to receive 0.48 shares of common stock of Berkshire (the "Merger Consideration").  Based on the closing price of Berkshire Hills Bancorp common stock on the New York Stock Exchange on December 11, 2018, the last trading day before public announcement of the Proposed Transaction, the value of the per share merger consideration payable to holders of SI Financial common stock would be $15.02.

4.      The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of SI Financial.  The Company has scheduled a special shareholder meeting for April 2, 2019 in connection with the Proposed Transaction.

5.      The Proposed Transaction as currently constituted is unfair to SI Financial shareholders because it does not adequately value the Company's future growth prospects, which will inure to Berkshire if the Proposed Transaction is consummated.

6.      Indeed, the consideration to be paid to the class members is unconscionable, unfair and grossly inadequate because, among other things: (a) the intrinsic value of the stock of SI Financial is materially in excess of $15.02 per share, giving due consideration to the possibilities of growth and profitability of SI Financial in light of its business, earnings and earnings power, present and future; (b) the $15.02 per share price is inadequate and offers an inadequate premium to the public stockholders of SI Financial; and (c) the Company received an indication of interest letter proposing a 100% stock transaction valued at $16.00 per share, with a fixed exchange ratio established at the time of a signing of a definitive agreement.  In addition, the potential acquiror expressed a willingness to provide up to 30% of the merger consideration in the form of cash.  Defendants' action in proceeding with the Proposed Transaction is wrongful, unfair, and harmful to SI Financial's public stockholders, and will deny them their right to share proportionately in the true value of SI Financial's future growth in profits and earnings.

7.      On February 26, 2019, in order to convince SI Financial's stockholders to vote in favor of the Proposed Transaction, the Board, jointly with Berkshire, authorized the filing of a materially incomplete and misleading definitive proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

8.      The Company's Board has breached its fiduciary duties to SI Financial shareholders by causing the Company to enter into the Merger Agreement that provides for the sale of SI Financial at an unfair price, and deprives SI Financial's public shareholders of maximum value to which they are entitled.

9.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against SI Financial and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.   Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to SI Financial stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

11.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   Additionally, the Company's common stock trades on the Nasdaq Global Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

13.      Plaintiff is, and has been at all times relevant hereto, the owner of SI Financial common stock.

14.     Defendant SI Financial is a Maryland corporation with its principal executive offices located at 803 Main Street, Willimantic, Connecticut 06226.  The Company's common stock is traded on the NASDAQ under the symbol "SIFI."

15.     Defendant Mark D. Alliod ("Alliod") is and has been the Chairman of the Company's Board at all times during the relevant time period.

16.     Defendant Rheo A. Brouillard ("Brouillard") is and has been a director of the Company at all times during the relevant time period.

17.     Defendant Roger Engle ("Engle") is and has been a director of the Company at all times during the relevant time period.

18.     Defendant Donna M. Evan ("Evan") is and has been a director of the Company at all times during the relevant time period.

19.     Defendant Michael R. Garvey ("Garvey") is and has been a director of the Company at all times during the relevant time period.

20.     Defendant Robert O. Gillard ("Gillard") is and has been a director of the Company at all times during the relevant time period.

21.     Defendant Kevin M. McCarthy ("McCarthy") is and has been a director of the Company at all times during the relevant time period.

22.     Defendant Kathleen A. Nealon ("Nealon") is and has been a director of the Company at all times during the relevant time period.

23.     Defendant Dennis Pollack ("Pollack") is and has been a director of the Company at all times during the relevant time period.

24.     Defendant Robert C. Cushman Sr. ("Cushman") is and has been a director of the Company at all times during the relevant time period.

25.     Defendants Alliod, Brouillard, Engle, Evan, Garvey, Gillard, McCarthy, Nealon, Pollack, and Cushman are collectively referred to herein as the "Individual Defendants."

26.     The Individual Defendants, along with Defendant SI Financial, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of SI Financial (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

28.     This action is properly maintainable as a class action for the following reasons:

a.      The Class is so numerous that joinder of all members is impracticable. As of November 2, 2018, there were 12,0233,611 common shares of SI Financial outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.      Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

30. SI Financial is the holding company for Savings Institute Bank and Trust Company (the "Bank"). Established in 1842, the Bank is a community-oriented financial institution headquartered in Willimantic, Connecticut. The Bank provides a variety of financial services to individuals, businesses and municipalities through its 23 offices in eastern Connecticut and Rhode Island. Its primary products include savings, checking and certificate of deposit accounts, residential and commercial mortgage loans, commercial business loans, construction loans and consumer loans. The Company does not conduct any material business other than owning all of the stock of the Bank and making payments on the subordinated debentures held by the Company.

### The Company Announces the Proposed Transaction

31.     On December 11, 2018, SI Financial and Berkshire jointly issued a press release

announcing the Proposed Transaction.  The press release stated in part:

> BOSTON,   and WILLIMANTIC,   Conn., Dec.   11,   2018 /PRNewswire/   --
> Berkshire Hills Bancorp, Inc. (NYSE: BHLB) ("Berkshire") and SI Financial
> Group, Inc. (NASDAQ: SIFI) ("SIFI") announced today that they have signed a
> definitive merger agreement under which Berkshire will acquire SIFI and its
> subsidiary, Savings Institute Bank and Trust Company ("Savings Institute"), in an
> all-stock transaction valued at $180 million based on Berkshire's stock price as of
> the close of business on December 10, 2018.
>
> Berkshire's total assets will increase to $13.6 billion including the $1.6 billion in
> acquired SIFI assets.  SIFI reported $1.3 billion in loans and $1.3 billion in
> deposits   as   of September   30,   2018.   This   merger   agreement
> increases Berkshire's market presence with 18 branches in Eastern CT and 5
> branches in Rhode Island, adding to Berkshire's existing 9 Connecticut branches.
>
> "We're pleased to welcome Savings Institute's customers and employees to
> the Berkshire family," said Richard M. Marotta, Chief Executive Officer of
> Berkshire.  "This transaction is a natural fit and brings with it a stable,
> longstanding deposit base with leading market position.  The Savings Institute
> franchise strengthens our Northeast presence, as we gain scale in Connecticut and
> enter into attractive Rhode Island markets.  Savings Institute is a well-established
> and trusted financial institution with deep client and community relationships. We
> look forward to expanding those relationships with the depth and breadth of our
> products and services.  This partnership will produce attractive returns for both
> our existing shareholders and the new shareholders from SIFI joining us in this
> transaction."
>
> "We're excited to be joining with a successful regional bank that shares our
> commitment   to   community   and   customer   service," commented Rheo   A.
> Brouillard, President and Chief Executive Officer of SIFI.  "Like Savings
> Institute, Berkshire Bank was established in the mid to late 1800s and has grown
> over the years as a result of that commitment.  The combination of our two banks
> will provide greater convenience and a broader array of products to our customers
> who will continue to have the personalized service they have come to expect."
>
> **TRANSACTION SUMMARY**
>
> Under the terms of the merger agreement, each outstanding share of SIFI common
> stock will be exchanged for 0.48 shares of Berkshire Hills common stock.  Upon
> closing,   any   outstanding   SIFI   options   will   be   vested   and   converted
> into Berkshire options.

Following are selected transaction terms and metrics based upon current projections:

- Total transaction value: $180 million
- Price to September 30, 2018 tangible book value: 118%
- Tangible book value dilution of $0.53 per share or 2.4% with an expected less than 3.0 year earn-back period
- Anticipated to be 5% accretive to earnings per share in 2020, the first full year of integrated operations
- Core deposit premium: 2.6%
- Targeted cost saves: 30%

## LEADERSHIP

Under the agreement, SIFI's President and Chief Executive Officer, Rheo A. Brouillard, will be appointed to Berkshire's Board of Directors when the merger is completed. Key business leaders from SIFI will remain with Berkshire Bank in continuing leadership roles.

## APPROVALS

The transaction is intended to qualify as a tax-free reorganization for federal income tax purposes, and as a result, the shares of SIFI stock exchanged for shares of Berkshire stock are expected to be transferred on a tax-free basis. The definitive agreement has been approved by the unanimous votes of the Boards of Directors of both companies. Consummation of the agreement is subject to the approval of SIFI's shareholders, as well as state and federal regulatory agencies. The merger is targeted to be completed in the second quarter of 2019.

## ADVISORS

Berkshire was advised by Piper Jaffray & Co. and legal counsel was provided by Luse Gorman, PC; SIFI was advised by Keefe, Bruyette & Woods, Inc., and legal counsel was provided by Kilpatrick Townsend & Stockton LLP.

32. Pursuant to the terms of the Merger Agreement, each outstanding share of common stock, par value $0.01 per share, of SI Financial will be converted into the right to receive 0.48 shares of common stock, par value $0.01 per share of Berkshire. Based on the closing price of Berkshire Hills Bancorp common stock on the New York Stock Exchange on December 11, 2018, the last trading day before public announcement of the Proposed Transaction, the value of the per share merger consideration payable to holders of SI Financial common stock would be $15.02.

33.     The Proposed Acquisition is subject to approval by the shareholders of SI Financial, as well as regulatory approvals.  The Company has scheduled a special meeting of shareholders in connection with the Proposed Transaction for April 2, 2019.

### The Proposed Transaction is Unfair to Shareholders

34.     The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

35.     For instance, in connection with the Proposed Transaction, the Company agreed to preclusive deal protection devices that ensure that no competing offer for the Company would be forthcoming.

36.     Specifically, Defendants agreed to: (i) a no-solicitation provision that prohibits the Company from soliciting, initiating, encouraging or participating in any discussion of or otherwise considering any inquiry or proposal that may lead to an acquisition proposal; and (ii) a provision that requires the Company to pay Berkshire a termination fee of $7.4 million.

37.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives.  Given that the preclusive deal protection provisions in the agreement between the companies impede a superior suitor from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

38.     In addition, the consideration to be paid to the class members is unconscionable, unfair and grossly inadequate, as demonstrated by Company D's December 5, 2018 indication of interest letter proposing a transaction to acquire SI Financial for value of $16.00 per share, nearly

a full dollar more than the $15.02 per share price currently contemplated by the Proposed Transaction.

### Compensation to the Company's
### Officers and Directors Resulting From the Proposed Transaction

39.     Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Transaction.  The following charts, taken from the Proxy Statement, show the payouts to the Company's officers and directors as a result of the Proposed Transaction:

| Named Executive Officers | Cash[1] ($) | Equity[2] ($) | Pension/ NQDC[3] ($) | Perquisites/ Benefits[4] ($) | Total ($) |
|---|---|---|---|---|---|
| Rheo A. Brouillard | 1,980,045 | — | 193,314 | 61,883 | 2,235,242 |
| Laurie L. Gervais | 987,535 | — | 136,758 | 26,650 | 1,150,943 |
| Paul R. Little | 808,765 | 5,560 | — | 62,398 | 876,723 |
| Lauren L. Murphy | 400,702 | — | 1,047,283 | 62,398 | 1,510,383 |
| Jonathan S. Wood | 498,622 | — | — | 31,717 | 530,339 |

| | Individual SERP ($) | Supplemental Executive Retirement Plan ($) |
|---|---|---|
| Rheo A. Brouillard | — | 193,314 |
| Laurie L. Gervais | — | 136,758 |
| Paul R. Little | — | — |
| Lauren L. Murphy | 933,619 | 113,664 |
| Jonathan S. Wood | — | — |

40.     Accordingly, certain of the Individual Defendants are motivated by their desire to secure personal benefits as a result of the Proposed Transaction.  Certain directors and/or officers stand to reap millions of dollars of personal benefits at the expense of the Company and its public shareholders if the Proposed Transaction is consummated, including the right to receive change-in-control benefits (such as the acceleration of their stock options), thus putting their own personal financial interests irreconcilably in conflict with the interests of the Company and its public shareholders.

### FALSE AND MISLEADING STATEMENTS
### AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

41.     On February 26, 2019, the Company filed the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's stockholders vote in favor of the

Proposed Transaction. The Proxy Statement contains the financial opinion and analyses of the Company's financial advisor Keefe, Bruyette & Woods, Inc. ("KBW") in connection with the Proposed Transaction.

42. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding KBW's Financial Opinion**

43. The Proxy Statement contains the financial analyses and opinion of KBW concerning the Proposed Transaction, but fails to provide material information concerning such.

44. With respect to KBW's *Berkshire Hills Bancorp Selected Companies Analyses*, the Proxy Statement fails to disclose the actual multiples for each of the selected companies' financial performance found on page 52 of the Proxy Statement. Similarly, with respect to KBW's *SI Financial Selected Companies Analyses*, the Proxy Statement fails to disclose the actual multiples for each of the selected companies' financial performance found on page 53-54 of the Proxy Statement.

45. With respect to KBW's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the reasons for choosing the transactions used in KBW's analysis; (ii) the date of each selected transaction's closing; and (iii) the actual multiples for each of the selected transactions used in KBW's analysis.

46. With respect to KBW's *Discounted Cash Flow Analysis* for SI Financial, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the calculation of the

discount rate range of 12.0% to 15.0%; (ii) the reason for selecting a five year period of 2019-2023; (iii) the basis for applying a range of 11.0x to 15.0x concerning estimated 2024 net income; and (iv) the excess cash flows projected by SI Financial.

47.     With respect to KBW's *Discounted Cash Flow Analysis* for Berkshire, the Proxy Statement fails to disclose (i) the inputs and assumptions underlying the calculation of the discount rate range of 10.0% to 13.0%; (ii) the reason for selecting a five year period of 2019-2023; and (iii) the basis for applying a range of 11.0x to 15.0x concerning Berkshire's estimated 2024 net income.

48.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

49.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material and Misleading Statements or Material Misrepresentations or Omissions Regarding the Background of the Proposed Transaction

50.     The Proxy Statement omits material information relating to the sales process leading up to the Proposed Transaction.

51.     The Proxy Statement discloses that on December 5, 2018, Company D delivered to SI Financial an indication of interest letter proposing a 100% stock transaction valued at

$16.00 per share, with a fixed exchange ratio established at the time of a signing of a definitive agreement.  In addition, Company D expressed willingness to provide up to 30% of the merger consideration in the form of cash.  Despite the fact that the Company had a superior deal on the table, Proxy Statement fails to disclose Defendants reasoning in selecting the inferior Berkshire merger offer over the Company D merger offer.

52.     Indeed, the Proxy Statement notes that on December 7, 2018, the Board held a telephonic meeting to discuss the indication of interest from Company D.  The Proxy Statement states, in pertinent part:

> On December 7, 2018, the SI Financial board of directors held a telephonic board meeting to discuss the unsolicited indication of interest letter from Company D and the increased exchange ratio offered by Berkshire Hills Bancorp. Representatives of KBW and Kilpatrick Townsend participated in the meeting. A representative of Kilpatrick Townsend reviewed with the board members their fiduciary duties to the stockholders of SI Financial. Representatives of KBW reviewed and compared the terms of the latest transactions proposed by Berkshire Hills Bancorp and Company D, provided an overview of Berkshire Hills Bancorp and Company D and their respective financial performance, reviewed the market performance of SI Financial, Berkshire Hills Bancorp and Company D, and reviewed financial aspects of each of the proposed transactions. The SI Financial board of directors discussed the execution risks of the proposed transaction with Berkshire Hills Bancorp compared to the proposed transaction with Company D and concluded that the execution risks of an immediately actionable transaction with Berkshire Hills Bancorp were significantly less than the risks associated with a transaction with Company D, which remained subject to negotiation of definitive transaction documents and reciprocal due diligence. Following discussion of the merits and risks of each transaction, including consideration of the prospects of Berkshire Hills Bancorp as compared to Company D, the SI Financial board of directors approved continuing to finalize the transaction with Berkshire Hills Bancorp under the terms of its revised proposal.

However, the Proxy Statement fails to disclose what risks would be associated with pursuing a superior transaction with Company D.  This information is material to shareholders in deciding whether or not to vote in favor of the Proposed Transaction.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

55.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

56.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

57.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to

disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

58.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

59.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

60.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

61.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such

misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

62.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

63.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of SI Financial within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SI Financial, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

65.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

67.    In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

70.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.     Directing the Individual Defendants to disseminate an Amendment to its Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 5, 2019                          Respectfully submitted,


By: /s/ Joshua M. Lifshitz
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

## **CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

I, Tammy Raul, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/ or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in SIFI securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have served as or sought to serve as a representative party on behalf of a Class under this title during the last three years. *See* Exhibit B.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 03/05/2019

Signature

**Exhibit A**

My transactions in SI Financial Group, Inc. (SIFI) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|----------|------|------|----------|------------------|-----------------|
| SIFI | 10/21/2018 | | P | 5 | $13.34 |

## Exhibit B

*Raul v. Amtrust Financial Services, Inc., et al.*, Case No. 1:18-cv-4440 (S.D.N.Y.)
*Raul v. Nevsun Resources Ltd., et al.*, Case No. 1:18-cv-10420 (S.D.N.Y.)
*Raul v. Dover Downs Gaming & Entertainment, Inc. et al.*, Case No. 1:18-cv-11506 (S.D.N.Y)
*Raul v. Cavium, Inc. et al.*, Case No. 1:18-cv-139 (S.D.N.Y.)